IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

NASRIN FATEMI                                                                  PLAINTIFF

v.                          No. 4:13-cv-742-DPM

DAN RAHN, in his official capacity;
DEBRA FISER, in her official and individual
capacities; JOHN DAY, in his official and
individual capacities; VERA CHENAULT,
in her individual capacity; and UNIVERSITY
OF ARKANSAS BOARD OF TRUSTEES                                  DEFENDANTS

ORDER

1. The remaining issue is whether the University Defendants retaliated against Dr. Fatemi when they reported certain alleged HIPAA violations. In its Order resolving many claims at the threshold, and converting what remained of the motion to dismiss into one for summary judgment, the Court gave the parties time to file any new HIPAA-related documents and new arguments. The University Defendants have supplemented the record. № 35. Dr. Fatemi asks the Court to withhold a ruling pending completion of informal or formal discovery. № 34. The Court of Appeals recently affirmed summary judgment for the University Defendants in Dr. Fatemi's first case,

which alleged discrimination of various kinds in UAMS's decision to end her neurosurgery residency. *Fatemi v. White*, No. 13-2536, slip op.,(8th Cir. January 6, 2015).

2. Because no direct evidence of retaliation exists on the HIPAA-related claims, the Court considers Dr. Fatemi's Title VII claim under *McDonnell-Douglas's* familiar framework. To make a *prima facie* case, Dr. Fatemi must show that she engaged in statutorily protected activity, that the University Defendants took an adverse action against her, and that a causal connection exists between the two occurrences. *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007). If she does, the burden of production shifts to the University Defendants to "show a legitimate, non-retaliatory reason for the challenged action." *Ibid.* Dr. Fatemi can overcome that reason by showing it was pretextual. Dr. Fatemi's retaliation claims under the First Amendment and the Arkansas Civil Rights Act share the same analysis. *Tyler v. Univ. of Arkansas Board of Trustees*, 628 F.3d 980, 986 (8th Cir. 2011); *Brown v. City of Jacksonville*, 711 F.3d 883, 892 (8th Cir. 2013). Viewing the record in a light most favorable to Dr. Fatemi, she hasn't provided sufficient evidence that creates a reasonable inference of retaliation.

First, it is doubtful that Dr. Fatemi has suffered an adverse employment action. Filing her original lawsuit against the University Defendants was certainly protected conduct. Dr. Fatemi alleges harm in her profession and costs incurred in defending against the alleged HIPAA violations. But she hasn't offered proof that any employment-related harm has resulted from the University Defendants' HIPAA reporting. Her difficulties in finding new work are undoubtedly caused in part by her failed residency at UAMS. Those difficulties, though, are insufficiently linked to the HIPAA issues. *Hughes v. Stottlemyre*, 454 F.3d 791, 797 (8th Cir. 2006). The University Defendants never identified Dr. Fatemi by name when reporting the alleged breach, making the patient notifications, or issuing the press release. № 35. Nor does the record show that she was sanctioned or penalized as a result. And Dr. Fatemi hasn't shown how UAMS's discussion with its lawyers about whether she was subject to criminal charges harmed her professional prospects.

Second, assuming the University Defendants' HIPAA disclosures were tinged with some "gotcha" motivated by Dr. Fatemi's first lawsuit, and assuming the disclosures have dented her professional reputation, the University Defendants had a legitimate, non-retaliatory reason to act. And

Dr. Fatemi hasn't shown that the reason was pretextual. The critical inquiry here is not whether Dr. Fatemi actually violated HIPAA, but whether the University Defendants "in good faith believed that [she] was guilty of the conduct justifying" the OCR report, the patient notifications, and the press release. *Johnson v. Securitas Security Services USA, Inc.*, 769 F.3d 605, 612 (8th Cir. 2014)(*en banc*). They did. No evidence supports Dr. Fatemi's allegation that University Defendants knew that she hadn't violated the statute. The undisputed facts show the University Defendants' good faith.

The HIPAA regulations impose a duty on covered entities such as UAMS to issue notifications for privacy breaches "reasonably believed" to have occurred. 45 C.F.R. § 164.404; *see also* 45 C.F.R. §§ 164.406 & 164.408. Dr. Fatemi acknowledged on deposition that she wasn't authorized to keep the health records for research. Case No. 4:11-cv-458, № 64-2 *at 9*. Her argument that she could keep them to help in her first lawsuit fails. HIPAA regulations permit the "covered entity" to use private health information for "health operations," which include disclosure for resolving internal grievances. 45 C.F.R. § 164.506; 65 Fed. Reg. 82462-01. This regulation allowed UAMS to disclose patients' records; it didn't allow Dr. Fatemi to keep them. UAMS,

moreover, invited public scrutiny of its HIPAA policies and subjected itself to a federal investigation and penalties when it decided to report the circumstances. 42 U.S.C. § 1320d-5; № 13-1; Case No. 4:11-cv-458, № 64-4 at 3. That self-exposure reveals good faith, not a retaliatory attack. A fact-finder could conclude only one thing: the University Defendants reasonably believed in good faith that a HIPAA breach had occurred, and were therefore duty-bound to report.

Third, the email exchange between Vera Chenault and Dr. Debra Fiser doesn't undermine the University Defendants' good faith. № 13-1; *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 417 (8th Cir. 2010). Chenault (the HIPAA compliance officer) notified Dr. Fiser (the Dean of the College of Medicine), Dr. Day, and another UAMS official about the possible breach involving many patients and her investigation of it. Dr. Fiser responded: "Oh. My. Gosh. Does she have any potential exposure because of this?" Chenault answered the question: "Absolutely. We are going to discuss turning her over to the police and US Attorney's Office for theft of the records on Monday[,]" at a meeting with counsel. № 13-1 at 2-3. Context is important. There was a lot in Chenault's original email. "Unfortunately, it appears as though Dr.

-5-

Fatemi never completed HIPAA training at UAMS, which is probably why we will end up having to notify these patients." *№ 13-1 at 1*. Chenault wrote that she was investigating why her office didn't stop Dr. Fatemi's computer access, which is what UAMS policy dictated if someone doesn't complete their training. *Ibid.* Finally, Chenault also noted that UAMS was working on a complete patient list and risk analysis to determine whether breach notifications were required. *Ibid.*

Read in context, Chenault's answer about discussing with counsel a report to police and federal prosecutors was part of an across-the-board response. The University Defendants were assessing UAMS's HIPAA exposure, Dr. Fatemi's personal exposure, and responding vigorously on all fronts. While a reasonable inference of retaliation could be drawn from the email, that inference, standing alone, is insufficient to support a verdict. *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 980 (8th Cir. 2012). The point was that Dr. Fatemi's potential criminal liability was going to be explored and discussed with UAMS's lawyers promptly — as part of a global response.

Finally, Dr. Fatemi's comparator argument fails. Another resident's leaving one surgery schedule unsecured, and thus allowing two unauthorized

-6-

people to see it, is incomparable to Dr. Fatemi keeping more than fifteen hundred surgery schedules, which covered thousands of patients, for two years after her firing. № *30 at 5; Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1084–85 (8th Cir. 2013). Dr. Fatemi has no valid comparator that would create a material fact question on pretext.

**3.** In any event, the individual University Defendants are entitled to qualified immunity. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Austell v. Sprenger*, 690 F.3d 929, 936 (8th Cir. 2012) (quotation omitted). The University Defendants were obligated to guard their patients' privacy, and are entitled to discretion in doing so. *Halpern v. Wake Forest University Health Sciences*, 669 F.3d 454, 462–63 (4th Cir. 2012). As reflected in Chenault's email, UAMS had to make a careful and thorough breach determination. The Court sees no mistake on what HIPAA required here. But if Fiser, Day, or Chenault made one, then qualified immunity protects them against suit for the judgment call.

**4.** Dr. Fatemi's request for further discovery, № *34*, is denied as futile. *Magee v. Trustees of Hamline University, Minnesota*, 747 F.3d 532, 537 (8th Cir. 2014). As the Court noted in its recent Order, much HIPAA-related discovery

was done in the first case. № 33 at 5. OCR recently closed its investigation. № 35-1, attachment 3. The undisputed material fact is that the University Defendants never publicly named Dr. Fatemi as the doctor involved in the breach. And the University Defendants only disclosed particulars about her and the retained records to OCR as required by law. 45 C.F.R. § 164.408. The Court sees no reasonable possibility that more discovery could develop any facts that would get Dr. Fatemi's retaliation case to a jury.

\* \* \*

Motion for summary judgment, № 21, granted.

So Ordered.

*WPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

12 January 2015